The first case is Gonzales v. County of Delaware and others. Councils? Good morning, Your Honor. From the appellant? Judge, good morning, Your Honor. My name is Jonathan Follender. I represent the appellant, Augustine Torres Gonzales. You may proceed. Thank you, Your Honor. Judge, I would respectfully request to reserve two minutes for rebuttal, please. You may do so. Thank you, Your Honor. Judges, may it please the court. It has been an axiom of this court for many, many years that on summary judgment, the non-moving party is afforded all reasonable inferences from the facts derived from the case. We submit that that did not occur here. But before we talk about what those things that were not decided or that were impermissibly decided by the lower court, we'd like to address with your leave the issue of qualified immunity. Because there's been some colloquy of whether in this case, best practices for forensic child interviewing for sexual abuse rise to the level of a constitutional violation. Do you have a case that says that? Yes, Your Honor. Well, it was actually in the opinion by the 12B6 Court. And the United States Supreme Court, I think in South Sur v. Katz, discussed in specific circumstances that certain evidentiary fact patterns have to rise to the level of a constitutional violation. And it's in our adversary's brief. Did it talk specifically about interviews of children? No, it did not. No, it did not, Your Honor. And we would like to extend to this court, we feel we have a good faith basis to discuss the Wilkinson case on that point. We think that issue is ultimately a red herring because both the 12B6 Court and the summary went to an analysis of probable cause after they did with the discussion of qualified immunity. They went to a discussion of probable cause and determined that that was an issue. But to the extent... Well, excuse me, so that we're clear on this. The court thought there was probable cause. If we were to agree with that conclusion, would that be the end of the matter? Oh, that would definitely be the end of the matter. All right, so you're going to give yourself some time to discuss that, right? Yes, I'm going to do, hopefully, Your Honor, right now in just a moment. But the issue in the Wilkinson case that this circuit decided 21 years ago in 1999 was, as this court knows, whether a DSS interview and investigation and concomitant law enforcement investigation in the sexual abuse context rose to the level in and of itself to a constitutional violation. And Defendant Hall has put in his brief that it doesn't. And the summary judgment court called all the indicia of a proper child forensic interview mere critiques in a footnote three in its decision. And the question is, if you don't address the clearly established law for false arrest and malicious prosecution, which is what this case is really about, you might be misled and think that forensic interviewing has to, or the failure to do so, rises to its own independent constitutional violation. And we concede in our brief that that's not yet the rule in this circuit. However, as this court knows, and we cited in our brief, the Wilkinson court stated clearly and specifically that let the word go forth from 1999 forward that a slightly more deficient forensic child interview will result, as the court stated, in real sanction. And we submit that that real sanction, a good, this would be a good case, we do have a good faith basis to extend Wilkinson to recognize in and of itself, apart from the false arrest claim here, apart from the probable cause involved with false arrest and malicious prosecution, the failure to perform a viable child forensic interview. It's time Wilkinson gave the notice. It's time to establish it. We certainly would welcome the court to extend Wilkinson because in Wilkinson, there are at least was some sort of a superficial investigation. We submit here in the facts of this case, your honors, there was no investigation at all. So it was a failure in the words of our expert, and I'll get to that in a moment. But qualified immunity forgives, even if there's no probable cause from our understanding, even if probable cause lacks to answer you, Judge Raggi, even if probable cause doesn't exist. If you find that there's no probable cause, of course, the case is over. But even if probable cause doesn't exist, qualified immunity might still apply. I understand that. I understand that. I'd like you to tell us why you think it was error to find the probable cause existed here. Because there were material disputed facts from the beginning to the end. The summary judgment court decided that as as it stated that all the failures of the And that was unimportant, that the defendant hall had independent probable cause just from the statements of the minor here. Now, keep in mind, that was in direct conflict with the holding by the 12B6 court, which we submit was a better analysis because that case at least reviewed the circuit law throughout the country and found that no federal court has ever extended the notion that probable cause is sufficient in and of itself by the statements of a six-year-old. But the summary judgment court found differently. It said the interviews were consistent. Well, that's an impermissible credibility determination in and of itself. Because we don't know what happened in those interview rooms because everything was done in contravention of the methodology that's been taught in New York State since the 1980s. And we don't know what happened there. That's a factual question for the jury. Well, what we do know, excuse me, what we do know is that the social worker told the police officer that she had spoken with the child. And on two occasions, the child made statements inculpating your client. Now, we also know it's undisputed that the child would not speak to the police officer. The question here is whether the police officer, having been given that information, had probable cause to arrest the defendant. I understand that you dispute how these interviews are conducted and all that. But is a police officer, when he's told by a social worker that a child has twice told him that there was abuse by a person, and the police officer knows that the child will not speak to the officer, is that enough to establish probable cause as a matter of law? Isn't that the question before us at that first step? I understand that if the answer is no, we then have other grounds on which we could consider qualified immunity. But I'm just asking you to tell us why those undisputed facts are insufficient for probable cause. Because, Judge Raggi, in this instance, they're not undisputed. The very nature of referring to them as undisputed facts... Are you disputing that that's what the social worker told the police officer? Oh, no, ma'am. But we're disputing... So, there is case law that a police officer can rely on information that he's provided by other people working for the government. I mean, it's not another police officer. And this person is telling him what the victim told her. And I understand we have layers of hearsay. But I didn't think any of those facts were disputed. And now the question is whether they establish probable cause. Judge, we would submit respectfully they do not. And the fact that... Help me out. Because the reliance by Defendant Hall on the DSS case workers, who was not trained to conduct a forensic interview, she admitted that, his reliance on her was in total contravention of his training, the methodology that is expected from the New York State Police and senior investigators. All 5,000 state police troopers were bound by the designated opponent testimony that never made it to the decision of the summary judgment court. We're going to address that. There was a complete deposition by a... What was he supposed to do that he didn't do? Well, he didn't do the following things. First of all, he knew that anatomical puppets were introduced into the examination or the interview by the DSS case worker. That was absolutely forbidden by his training, by the best practices curriculum and protocol that's been adopted by the New York State Police. It's suggestive. It's improper. You're saying that it was unreasonable. He was not entitled to rely on the social workers report. Correct. He had an independent... And that is because he didn't know her qualifications. He wasn't entitled to rely on her just generally. He had an obligation to make a report. Let me answer that in two ways. And I don't mean to cut you off, Judge. Have you finished? I have. Thank you. There are two very good answers to that, and that's a very good question. First of all, the investigator had an independent duty. That's why he was called in. He had an independent duty to conduct an investigation. He never did it. He abandoned the opportunity to conduct an investigation. According to our expert witness, whose affidavit and expert report served under Federal Rule 26, never made it to the decision of the Summary Judgment Court. But he had an independent duty to verify. And the fellow officer rule, just to get back to Judge Radji's question for just a moment, all the cases cited by the Summary Judgment Court are in a posit. Because in that effort by the Summary Judgment Court to say, well, the fellow officer rule covers the information that defendant Hall received, all the cases he cited were distinguishable. The bottom line, though, I'm sorry to cut you off, but I understand that you're saying the bottom line is Officer Hall was a trained individual. There are very well-developed protocols. There's a lot of expertise and knowledge that comes to this. And accordingly, since he was the pivot point, he was not entitled to rely on someone whose expertise he didn't know, the quality of the investigation he didn't know. And therefore, he was not entitled. He didn't have probable cause for an arrest based merely on these two reports by the social workers. Is that right? That is correct. But let's say he had some basis. There are material factual questions as to whether he had that probable cause. We assert no, because the standard was never applied. Let's give one example. Defendant Hall testified he knew that the DSS caseworker used anatomical dots in questioning the minor. He saw them. He knew they were used. Part of his training, part of the best practices curriculum adopted by the New York State Police and taught by our expert witness, our independent expert witness in this case, whose report was never referred to, whose opposition in summary judgment was never referred to, that part of the training is that anatomical dots will not be introduced into such an interview by somebody who's uncertified and untrained. And that was corroborated by the New York State Police designated opponent. Now, what is this methodology best practice? This isn't mysticism, as the court knows. This is an effort to take all of the knowledge we've learned from the time of Wilkinson, from 1999 and even before that, and bring it into the present. This is not an exact science, but to the extent we can follow the science, this is the accepted protocol taught to the New York State Police, taught to social workers throughout New York State. You must abide by it. If you don't, you deviate. And Sergeant Keene, in his testimony, who cited this in our brief, numbers of times he was asked, if you fail to follow the methodology taught to you in your training and you're a senior investigator for the state police and you conduct a child forensic interview, are you deviating then from the methodology of the state police, which is only produced to increase reliability and trustworthiness? That's the whole thing. Counsel, your time has expired. You have reserved some time for rebuttal. Thank you, Judge. Thank you, Your Honor. We'll hear from the police. Inspector Hall. May it please the court, Beasley Kiernan for Defendant Hall. As Your Honors have noted, the question in this case is whether Defendant Hall reasonably relied on the evidence presented to him when he arrested plaintiff for sexual abuse. The only question for the jury would be what evidence Hall relied on, but there's no dispute about that. He relied on I.T. statements as relayed to him by Bogdan Kumpstead, and he relied on plaintiff's own statements during the interrogation. Whether those statements support probable cause, whether they're reasonably trustworthy is a question of law for the court, and the district court correctly held that the evidence was reasonably trustworthy and supported probable cause to arrest. Plaintiff's best practices argument is another red herring. First of all, it was not my client who purportedly deviated from these forensic interviewing best practices. It was Bogdan Kumpstead, and plaintiff cites Wilkinson, but Wilkinson was a case against social workers. It was not a case against police investigators. And second, plaintiff cites no authority for the proposition that an arresting officer may rely on the statements of a child victim only if the statements are elicited in a perfectly, forensically sound manner. But still, I'm troubled, Mr. Kiernan, I'm still troubled by the sequence of events here and the fact that the investigator, Mr. Hall, had special training in how to conduct these interviews and the notorious unreliability of these interviews and suggestibility of very young children. In the impropriety or the disrecommendations, if you will, about the use of anatomical dolls, the social worker didn't have this training, didn't have the same kind of, she didn't have the arresting authority. And it seems to me he bore a special responsibility to ascertain the reliability and not just to rely on the facial report that twice in circumstances really unknown to him, the child had said that her uncle touched her private parts. It seems to me with his training, with his authority, he bore special responsibility potentially to assess probable cause with the benefit of all his training and a certain measure of skepticism. Is that, I mean, he delegated some of his authority in effect to the social worker when he left the interview room and let her proceed. I understand that he would be in a difficult position if the child was unwilling to talk with him, but doesn't he have some special responsibility as the arresting officer and trained individual to assess whether there's real probable cause with a more discerning eye, I guess? Your Honor, defendant Hall would agree with that. And he testified during his deposition that he didn't think he had probable cause based solely on I.T. statements during the interview. He believed that she was reliable. She seemed intelligent and articulate to him. And she was six years old, which is young, but certainly old enough to describe things that had happened to her. There was no reason why it didn't seem like she was being coached or she had a reason to get her uncle in trouble. And then defendant Hall did try to interview her in a forensically sound manner. But she just wouldn't say anything. So he left the room. who is a social worker with the Delaware County Division of Social Services confirmed the disclosure. Hall had no reason not to trust that particular disclosure. Granted, it may not be enough for probable cause, but he had no reason to mistrust it. And then he went out and interviewed plaintiff and plaintiff made a number of statements in his interrogation that raised red flags for defendant Hall. So I have a question for you about that. Having watched the videotape, it struck me. I'm not the fact finder, but it struck me that there was a lot of that. The transcript didn't really reflect the reality of the of the interaction, that there were significant linguistic difficulties and barriers and a lot of room for misinterpretation. And that Mr. Gonzalez flatly denied touching his niece who he'd acted as a father for since her birth, basically, in any way for any sexual gratification. You can take the one statement that could be taken out of context is saying that perhaps he had some gratification, but it was followed immediately by no, that wasn't me. He was describing some other circumstance. So that on top of it also raised questions for me about what investigator Hall was was doing and the propriety of his actions. Could you assuage my concerns? Sure. As for the language barrier, one of the first things defendant Hall asked plaintiff, he acknowledged that plaintiff's primary language was Spanish, but he asked plaintiff if he was comfortable speaking in English and plaintiff said yes. At that time, though, he didn't know he was under criminal investigation. Isn't that right? That's true. At the beginning of the interview, he did not. Yeah. And although he had served as an interpreter in the court setting before it, my understanding was it wasn't in a criminal setting and certainly not in a circumstance where he was defending himself for criminal charges. Isn't that right? That's right. It was not in defending. Yeah. Would you remind all of us what he said that was inculpatory when you interviewed him? Sure. For defendant Hall, the biggest red flag was when he asked plaintiff point blank, how many times have you inappropriately touched your knees? And he said a few times. And then plaintiff later explained what he meant by inappropriate. He said anything about here, gesturing to his own crotch area. And he said a number of other statements that indicated that he had touched her in ways that were inappropriate. For example, he mentioned that one time he hugged and hugged her and touched her and she told him to stop. He apologized. He said, I know it's not right. So it did seem to defendant Hall that plaintiff did inappropriately touch IT. And perhaps plaintiff didn't think that it was sexual in nature or wrong, but that doesn't mean objectively for probable cause purposes that it was not enough. For example, plaintiff said he didn't think that they were not even grabbing or rubbing or stuff like that, which indicates that perhaps for plaintiff it didn't seem wrong. But that does not mean it didn't seem wrong to defendant Hall. But he also highlighted times when his niece came and wanted to jump on his lap and he apologized for brushing his hand against her leg and then, you know, putting her off his lap when she was five. You know, a child jumps on a parent or a parent figure regularly. And that also suggests to me that there was significant confusion about what kind of touching people that the investigator was talking about with Mr. Gonzalez. Plaintiff did talk about some of these accidental incidents, but there were enough red flags in the interview that overall, when combined with IT's own disclosures, it seemed it provided a probable cause to arrest. Your time has expired. You have reserved. No, no time for rebuttal. We'll hear from County of Delaware. And you also are representing the social worker, are you not? Yes, Your Honor. May it please the court, Charles Spagnoli of the law firm of Frank W. Miller, PLLC, appearing for Delaware County and Cynthia Bogdan-Cumston. We are here before the court on a decision on a motion to dismiss. The complaint contains no allegation that my client made a conclusion or finding of abuse. She turned over the issue to the police for determination. Therefore, it's our position that the Wilkinson case has no application here. The only specific factual allegations against my client are that she conducted two interviews, according to methods that do not rise to plaintiff's liking. And she subsequently reported the results of those interviews to the police. There's no allegation that she provided false information to the police. No matter how many times plaintiff's counsel insists in his briefs to the contrary, neither of these allegations supports an inference that she either knowingly provided false information to the police, or that she importuned the police to arrest or prosecute Mr. Torres-Gonzalez. Plaintiff's counsel might as well be arguing that because Ms. Bogdan-Cumston wore a blue shirt that day, that constitutes importuning the police to arrest or prosecute his client. There is no basis for a claim against my client under false arrest or malicious prosecution. And there certainly is no allegation rising to the level of material perjury or fabricated evidence. Counsel, how did your client respond to the allegations that she was untrained and unqualified to question this six-year-old? Well, she testified that she did have training on interviewing. She did not have necessarily training on the specific methodology that plaintiff's counsel contends would be appropriate. But since the claims against her for false arrest or malicious prosecution, whether her training was sufficient or not simply does not bring into question whether she knowingly provided false information to the police, or urged them or importuned them to arrest or prosecute Mr. Torres-Gonzalez. And that concludes the examination. Beyond that, as I mentioned before, in order to defeat qualified immunity on such claims, plaintiff would have to have alleged that she engaged in conduct that constituted material perjury or presented knowingly fabricated evidence to the police. There's simply nothing to that account here. Thank you. Thank you, counsel. Mr. Follender, you have reserved two minutes for rebuttal. You can take that now. Thank you very much, Judge Pooler. Ma'am, just a brief comment as to Defendant Compton. As we put in our reply brief, the importuning occurred at the third interview. After the state police, in their incident report, said we received negative results for touching, and touching is the basis for finding of criminal conduct under Penal Law 130.65. Without touching, there's no case. And by the way, Defendant Hall, just to throw a word in about dissipation of probable cause, even if there was, testified three months later after my client's arrest, he revealed across examination that he was seeking a fourth interview with the minor to reconfirm touching. And the designated opponent for the New York State Police states unequivocally that that was a deviation also from the policies of the New York State Police. If you don't have touching at the time of arrest, and then you say later that you need a fourth interview, you don't have probable cause. So the importuning came when an unqualified DSS... I'm sure I'm quite following that. They did have a claim of touching. I thought the request for a fourth interview was to confirm that. Correct. Because they were now going to go forward, and eventually, at one point, the mother stopped cooperating with the police, and that's why there were no charges pursued. But that's not our concern. I mean, I thought they did have a report of touching at the time of arrest. Yes, they had a report that was unqualified to be a report of touching. I understand your argument on that, but it's not that they didn't have that. Oh, they had that, but as the court knows, probable cause is a different standard than false arrest. They had to prove that, and I hope I can continue my answer, that the commencement of the suit had to continue. There had to be the same probable cause to continue after the arrest. That definitely dissipated because they stated that they needed a fourth interview to confirm, to reconfirm the touching. That was the point of the fourth interview, and it was revealed on cross. We had no idea. At the felony hearing, that was a surprise. So it showed that they still weren't sure that the one basic element required by PL130.65, the impermitted touching, even happened. And I just want to briefly, if I may... That's what they're suggesting your client's interview confirmed, that there was some touching, but he said that it was accidental, unintended. That's what I understood your adversary to be arguing. Do you want to respond to that? No, I absolutely agree with my adversary. There was a factual dispute there. It should go back to the jury, qualified immunity. No, no, with respect to probable cause, you're saying they didn't know they had touching. And I'm suggesting to you that from both the social worker's statement and Mr. Gonzales' statement, they knew they had touching. What they didn't know was the mens rea. Correct. Am I understanding that correctly? Oh, no. Well, let's put it this way. They didn't have mens rea, but they also didn't have completely reliable and trustworthy information, even as to the touching. That's not the probable cause standard. I mean, you're suggesting that they had to have eliminated all doubt, and that's not the probable cause standard. Not all doubt, Judge, but because of the deponent's testimony from the state police that this was the way to conduct a proper forensic interview, and our expert opinion, by the way, which was never considered by the court. The deposition of the designated deponent was never considered by the summary judgment court. Our own appellate affidavit was never considered by the summary judgment court. So the summary judgment court adopted this touching narrative completely, we would submit, Judge, in a biased and impermissible way of accepting only one narrative. That's why we put in our brief. It's a very compelling narrative, and it was picked up by the defendant as if we agreed with him, but he left out the next clause of that sentence. It's a compelling narrative if you leave out all of the appellant's evidence. There's no indication. We would like to think respectfully that the lower court always reviews everything or has at its disposal, but, Judge, there's nothing in that lower court decision that speaks to Gus's affidavit, the expert opinion, an expert report, the expert affidavit served in opposition to the summary judgment motion.  Your time has long expired. Thank you all. We'll reserve decisions. Thank you very much. Thank you, Your Honor.